UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:19-CV-0661-RGJ-LLK

SANDRA BOBALIK, *et al.*                                                    PLAINTIFFS

v.

BJ'S RESTAURANTS, INC., *et al.*                                            DEFENDANTS

## OPINION & ORDER

Chief Judge Greg N. Stivers referred this matter to U.S. Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. [DN 5].  On March 23, 2020, Chief Judge Stivers recused and reassigned this matter to Judge Rebecca Grady Jennings.  [DN 23].

This matter is currently before the Court on Defendants BJ's Restaurants, Inc. and BJ's Restaurant Operations Company's ("the BJ's Defendants") Motion for Protective Order, [DN 33], to which Plaintiffs and Defendant Central Cleaning, LLC ("Central Cleaning") responded, [DN 34, 38], and to which the BJ's Defendants replied, [DN 40].  This Motion is now fully briefed and ripe for adjudication.

For the reasons herein, the BJ's Defendants' Motion for Protective Order, [DN 33], is **DENIED**.

## BACKGROUND

This premises liability case arises from a slip and fall incident that occurred at a BJ's restaurant in Louisville, Kentucky on September 4, 2018.  That day, Plaintiff Sandra Bobalik and her friend, Linda Savage, went for lunch at the BJ's Restaurant & Brewhouse at 7900 Shelbyville Road, Louisville, Kentucky.  [DN 1-1, DN 22].  As they were being led to a booth, Mrs. Bobablik

fell and was injured.  [DN 22].  Plaintiffs allege that Mrs. Bobalik's fall and subsequent injury was caused by the floor being slippery or slick at the time of the subject incident.  *Id.*

Mrs. Bobalik and her husband, Joseph Bobalik, then brought suit in the Commonwealth of Kentucky's Jefferson Circuit Court, asserting claims for negligence and loss of consortium against the BJ's Defendants and Central Cleaning, the cleaning company used at this BJ's location.  [DN 1-1].  As part of those claims, Plaintiffs seek punitive damages, amongst other things, arguing that "BJ's longstanding knowledge of the floors being slick, greasy, and/or wet, their less than adequate safety measures despite this knowledge, and the high frequency of the falls all go towards the likelihood of a patron falling and being injured."  [DN 22 at 117].

In response, the BJ's Defendants asserted a cross-claim against Central Cleaning, LLC, for indemnity, apportionment, and contribution.  [DN 1-1 at 48-52].

Central Cleaning then removed this action from Jefferson Circuit Court to the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1441(a).

In discovery, a dispute arose over whether the BJ's Defendants should be required to produce certain incident reports.  With leave of this Court, Plaintiffs moved to specifically compel the production of the BJ's incident reports from January 2014 through present for slip and falls on the wooden floors of the dining area where the subject incident allegedly occurred.  *Id.*  The BJ's Defendants objected, arguing that if they are required to produce those documents, the scope should be limited to incident reports from one year prior to the subject incident and that anything beyond that one-year period would be irrelevant and inadmissible.  *Id.*

Despite the BJ's Defendants' arguments to the contrary, this Court found that the requested incident reports both prior and subsequent to the subject incident could be relevant to Plaintiffs'

claims or the defenses thereto and were, therefore, discoverable [DN 28].  Accordingly, the Court

granted Plaintiffs' Motion to Compel and required the BJ's Defendants to produce the requested

documents within two weeks.  [DN 28].

Now, a dispute has arisen over the BJ's Defendants' compliance with that Order.  On June

5, 2020, Plaintiffs' counsel contacted the Court claiming that the BJ's Defendants were

withholding certain pages of the incident reports that the BJ's Defendants deemed "internal

investigation notes."

On June 9, 2020, the Court conducted a telephonic status conference to discuss this dispute.

[DN 32].  At that time, the BJ's Defendants' counsel informed the Court that, as a standard

practice, the BJ's Defendants never produce their investigation notes.  Further, the BJ's Defendants

take the position that such notes are separate and apart from the incident reports at issue.  While

the BJ's Defendants did disclose the investigation notes for the subject incident in this matter, they

claim that such disclosure was inadvertent and that such inadvertent disclosure should not require

the production of investigation notes for other slip and fall incidents.  Notably, the BJ's Defendants

disclosed that they never produced a privilege log documenting the existence of those investigation

notes and explaining the nature of the privilege asserted.

Following that status conference, the Court entered its June 11, 2020, Order granting the

BJ's Defendants leave to file a motion for protective order by June 23, 2020.  [DN 32].  Any

response thereto was to be filed by no later than fourteen days thereafter.  *Id.*  No reply was

permitted at that time.  *Id.*

On June 23, 2020, the BJ's Defendants filed their Motion for Protective Order seeking an

order from this Court determining that the BJ's Defendants are not required to produce their Guest

Incident Investigation reports/questionnaires ("investigation notes") on the basis that those documents are protected by the attorney-client privilege and the work product doctrine. [DN 33].

In their Motion, the BJ's Defendants contend that that they have already complied with this Court's Order requiring the production of certain incident reports by producing both the manager incident report and the guest incident report, when available, for the thirty-two different slip and falls that occurred on the wood floor in the dining room from January 1, 2014, though the date of this Court's Order. *Id.*

The BJ's Defendants argue that, while both are prepared by the restaurant manager, the manager incident report and the investigation notes at issue in this dispute are separate documents that serve different purposes and contain different information. *Id.* The manager incident report "was created by [the] BJ's Defendants to document an incident and for the purpose of providing information to BJ's Risk Management department about an incident. It is transmitted to BJ's Risk Management in anticipation of litigation and, if needed, to attorneys." *Id.* at 308 (internal citations omitted).

In contrast, the investigation notes, the BJ's Defendants argue, are comparable to a plaintiff attorneys' intake questionnaire. *Id.* at 309. It "was drafted and created with the input, assistance, and guidance of outside defense counsel, for [the] BJ's Defendants to use in gathering information that its defense attorneys will need if the claim goes into litigation." *Id.* at 308 (internal citations omitted). As such, the BJ's Defendants argue that this form "reflects the processes, mental impressions, and conclusions" of the BJ's Defendants' outside counsel. *Id.* at 309. The investigation notes are then completed by the restaurant manager on the "confidential form, for the purpose of transmitting information from employees to defense counsel as part of evaluating the claim, and to secure answer to specific questions drafted by [the] BJ's Defendants['] outside

counsel in anticipation of litigation." *Id.* at 309 (internal citations omitted).  In support of all of this, the BJ's Defendants attached and cited to the affidavit of Crystal Wang, the Director of General Liability Claims for BJ's Restaurants, Inc.  [DN 33-1].

The BJ's Defendants argue that the investigation notes should be protected from disclosure due to both the attorney-client privilege and the work product doctrine.  While very little of their briefing is dedicated to attorney-client privilege, it is presumably based on their contention that the investigation notes constitute a transmittal of information from the BJ's Defendants' employees to their counsel.  Further, since the investigation notes form was "created with the input, assistance, and guidance of [the] BJ's Defendant's outside counsel to collect, preserve, and communicate information that defense counsel would likely want and need to defend [the] BJ's Defendants following an incident," the BJ's Defendants argue that it constitutes attorney work product.  *Id.* at 311.  To the extent it constitutes fact work product, the BJ's Defendants contend that the other parties cannot establish a substantial need and undue hardship relating to those documents that would be sufficient to overcome the work product doctrine and mandate their production.  *Id.* at 315-316.  As such, the BJ's Defendants request a protective order to prevent the production of those purportedly privileged documents.  *Id.*

On July 7, 2020, Plaintiffs filed their Response in opposition to the Motion for Protective Order, [DN 34], and on July 8, 2020, Central Cleaning filed its own Response, [DN 38].  Both argue that neither the attorney-client privilege nor the work product doctrine apply to the investigation notes at issue.  Further, they argue that even if the wok product doctrine does apply, the documents should still be produced as Plaintiffs and Central Cleaning have a substantial need for them.

The next day, the BJ's Defendants requested leave to file a reply, [DN 37], which was granted, [DN 39]. On July 17, 2020, the BJ's Defendants filed their reply to Plaintiffs and Central Cleaning's respective responses to the Motion for Protective Order. [DN 40]. The Motion is now fully briefed and ripe for adjudication.

## DISCUSSION

The BJ's Defendants argue that they should be protected from disclosing their investigation notes for the thirty-two incidents for which they have produced incident reports. This argument is premised on their contention that the investigation notes are protected by both the attorney-client privilege and the work product doctrine. For the reasons set forth below, the BJ's Defendants have failed to meet their burden as to both and their Motion for Protective Order must be denied.

### I.        Attorney-Client Privilege

The BJ's Defendants assert that the attorney-client privilege applies to the investigative notes because they consist of communications intended to be transmitted to the BJ's Defendants' counsel. They have, however, failed to meet their burden in establishing that privilege and, to the extent the Motion for Protective Order is based on the attorney-client privilege, it must be denied.

As this is a diversity case, the Court must apply Kentucky law to determine the applicability and scope of the attorney-client privilege. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Under Kentucky law, the attorney-client privilege protects "confidential communication[s] made for the purpose of facilitating the rendition of professional legal services to the client." KRE 503(b). This can also include communications between a client's representative and that client's lawyer. KRE 503(b). For purposes of the attorney-client privilege analysis, a client's employee can be considered a client's representative when that employee makes or receives such a qualifying communication: "(i) [i]n the course and scope of his or her

employment; (ii) [c]oncerning the subject matter of his or her employment; and (iii) [t]o effectuate

legal representation for the client." KRE 503(a)(2)(B). Importantly, the employee must be aware

his or her communication is being used so the employer could receive legal advice. See *Lexington*

*Pub. Library v. Clark*, 90 S.W.3d 53, 59–60 (Ky. 2002) (quoting with approval *Upjohn v. United*

*States*, 449 U.S. 383 (1981)); see also *Frankfort Reg'l Med. Ctr. V. Shepherd*, No. 2015-SC-

000438-MR, 2016 WL 3376030, at \*12 (Ky. June 16, 2016) (The Kentucky Supreme Court

expressly holding in an unpublished opinion "that statements by a corporate client's employee can

be privileged only if the employee is aware that his or her statements are being elicited for the

purpose of obtaining legal advice.").

Ultimately, "[w]hether a particular communication is privileged depends (absent

waiver)…on the facts and circumstances under which the communication was made." *Pinnacle*

*Sur. Servs., Inc. v. Manion Stigger, LLP*, 370 F. Supp.3d 745, 751 (W.D. Ky. 2019) (quoting

*Lexington Pub. Library*, 90 S.W.3d at 59). "The privilege 'should be strictly construed.'" *Id.*

(quoting *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2001). The burden of establishing the

applicability of the attorney-client privilege to the communications is on the party asserting it. See

*Univ. of Louisville v. Eckerle*, 580 S.W.3d 546, 552 (Ky. 2019) (citing *The St. Luke Hospitals, Inc.*

*v. Kopowski*, 160 S.W.3d 771, 775) (Ky. 2005) (internal citations omitted)). To meet that burden,

"the party claiming the privilege…must provide the court with sufficient information to show the

existence of the elements of the privilege and to allow review of that decision by higher courts."

*Id.* (quoting *Collins v. Braden*, 384 S.W.3d 154, 164-65 (Ky. 2012)).

Here, the BJ's Defendants claim that the attorney-client privilege applies to the

investigation notes that a BJ's restaurant manager would fill out after an incident. While the BJ's

Defendants do not clearly set out the legal argument for the applicability of the attorney-client

privilege, it appears based on their contention that the investigation notes constitute a transmittal of information from the BJ's Defendants' employees to the BJ's Defendants' defense counsel. [DN 33 at 309].

As the BJ's Defendants are the parties asserting the attorney-client privilege, they bear the burden of establishing its applicability by providing the court with sufficient information to show the privilege exists.  Further, the privilege must be strictly construed.  With that in mind, the Court must determine whether the BJ's Defendants have met their burden of establishing applicability of the attorney-client privilege to each set of investigation notes at issue.

As set out above, the attorney-client privilege can apply to confidential communications between a client's employee and a client's attorney when the employee makes or receives such a communication in the course and scope of his or her employment, concerning the subject matter of his or her employment, and to effectuate legal representation for the client.  The employee, however, must be aware that the communication is being made so the employer could receive legal advice.  See *Lexington Pub. Library* 90 S.W.3d at 59–60 (Ky. 2002) (quoting with approval *Upjohn*, 449 U.S. 383 (1981)); see also *Frankfort Reg'l Med. Ctr. V. Shepherd*, No. 2015-SC-000438-MR, 2016 WL 3376030, at *12 (Ky. June 16, 2016).

While completing the investigation notes may be part of a BJ's restaurant manager's job, concern the subject matter of that job, and effectuate legal representation for the BJ's Defendants, the BJ's Defendants have failed to demonstrate that the manager(s) who completed the investigation notes at issue were aware their statements were being elicited for the purpose of the BJ's Defendants obtaining legal advice.  In fact, the BJ's Defendants have failed to even identify the managers who filled out each set of the investigation notes at issue.  Without showing such

8

awareness, the BJ's Defendants cannot meet their burden to show the applicability of the attorney-client privilege for each set of the investigation notes at issue.

Accordingly, to the extent that the BJ's Defendants rely on the attorney-client privilege in support of their Motion for Protective Order, the Motion must be denied.

## II.     Work Product

The BJ's Defendants next rely on the work product doctrine to claim that the investigation notes should be protected from discovery.  As they cannot meet their burden in establishing that the investigation notes at issue were created in anticipated of litigation, the BJ's Defendants cannot establish the applicability of the work product doctrine and their Motion for Protective Order must be denied.

While the attorney-client privilege in a diversity case is governed by state law, the applicability and scope of the work product doctrine is governed solely by federal law.  *In re Powerhouse Licensing*, 441 F.3d at 472.  Per Federal Rule of Civil Procedure 26(b)(3)(A), the work product doctrine protects "documents and tangible things that are prepared *in anticipation of litigation or for trial* by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).  Ordinarily, work product is only entitled to qualified protection, where a party can still obtain it if the material is otherwise discoverable and that "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i-ii).  An exception, however, exists as to opinion work product, or work product that demonstrates "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  Opinion work product is entitled to almost absolute protection.  *Id.*

The work product doctrine only protects documents and tangible things. Fed. R. Civ. P. rule 26(b)(3). It does not protect the discovery of underlying facts, including facts concerning the creation of work product or the facts contained within that wok product. *Roach v. Hughes*, No. 4:13-cv-00136-JHM, 2015 WL 13548427, at *5 (W.D. Ky. Aug. 3, 2015) (internal citations omitted).

In determining whether the work product doctrine applies, one of the key inquiries is whether the documents at issue were prepared in anticipation of litigation or for trial. To make that determination, the Sixth Circuit has adopted the "because of" test, which asks whether the documents at issue were prepared or obtained *because of* the prospect of litigation. *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). The Sixth Circuit then adopted a two-part inquiry to determine whether the "because of" test is met, which asks: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594. If both parts are answered in the affirmative, then the "because of" test is met and the work product doctrine applies. Since documents created for nonlitigation purposes are not protected, regardless of content, "[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question." *Id.* at 594. "[T]he burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'" *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *Roxworthy,* 457 F.3d at 595 (internal citations omitted)).

Here, as they are the parties claiming protection, the BJ's Defendants bear the burden of establishing the applicability of the work product doctrine. In attempting to meet that burden, the

BJ's Defendants argue that the investigation notes are protected by the work product doctrine "because they include a carefully formulated questionnaire, drafted with the assistance and guidance of outside defense counsel, and are purposefully designed to constitute an attorney-client interview for the purposes of establishing a defense strategy based on the anticipation of potential litigation." [DN 40 at 428]. The BJ's Defendants argue that this not only constitutes work product, but specifically opinion work product that is entitled to absolute protection. They argue the investigation notes form is opinion work product because the form itself reveals the BJ's Defendants' outside counsel's "processes, mental impressions, and conclusions," [DN 33 at 309], as it "was drafted and created with the input, assistance, and guidance of outside defense counsel, for [the] BJ's Defendants to use in gathering information that its defense attorneys will need if the claim goes into litigation." *Id.* at 308 (internal citations omitted).

From the BJ's Defendants' briefing and the attached affidavit, it is unclear to what extent, if any, the outside counsel's "input, assistance, and guidance" was actually utilized in the drafting of the investigation notes form. While their outside counsel may have provided such advice, there is nothing to indicate that the BJ's Defendants accepted and incorporated it in the investigation notes form. Similarly, there is nothing to indicate that their outside counsel drafted any portion of the form. Without further information, the BJ's Defendants have failed to meet their burden in showing that this final version of the investigation notes form reflects, to any degree, their outside counsel's "processes, mental impressions, and conclusions." *Id*. at 309.

Even if the documents did reflect the BJ's Defendants' outside counsel's opinions in any way, that alone is insufficient to protect the documents through the work product doctrine. The documents must still have been prepared in anticipation of litigation or for trial. See Fed. R. Civ. P. 26(b)(3)(A). As such, this Court must determine whether the documents were prepared *because*

*of* the prospect of litigation. *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). To determine this, the Court asks: (1) whether the documents were created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable. *Id.* at 594.

Here, the BJ's Defendants argue that the "because of" test is met because the investigation notes form was designed "to assist [the] BJ's Defendants' defense counsel in evaluating an incident/claim and to assist counsel in developing a defense strategy." [DN 33 at 313]. While it is not implicitly stated, this argument is necessarily premised on the position that any incident could result in litigation. That position, however, is not objectively reasonable. There is not a reasonable expectation of litigation from each and every incident that may occur at a BJ's restaurant. see *Smith v. Marten Transp., Ltd.*, 2010 WL 5313537, at *4 (D. Colo. Dec. 17, 2010) (holding that an original investigation report was not privileged when produced in the ordinary course of business to investigate a multi-car accident involving one of defendant's trucks and drivers).

Further, there is nothing provided by the BJ's Defendants that would indicate the investigation notes form is filled out by the BJ's restaurant managers only in situations where there is a reasonable expectation of litigation. In fact, there is nothing in Ms. Wang's affidavit, the sole affidavit attached to the BJ's Defendants' Motion, that would indicate in what situations the investigation notes are required to be filled out. [DN 33-1]. Instead, it merely states that the form is "used to gather information about an event." What qualifies as an "event" is never stated. The BJ's Defendants Motion provides slightly more information, indicating that the investigation notes form is filled out after a "guest incident." Again, however, not all incidents yield a reasonable expectation of litigation.

12

As the BJ's Defendants have not met their burden in establishing that the investigation

notes were created because of the prospect of litigation, they have not established the applicability

of the work product doctrine.[1] Since the documents are not protected by the work product doctrine,

there is no need to analyze whether the parties seeking those documents have established a

substantial need for the materials to prepare their case and cannot, without undue hardship, obtain

their substantial equivalent by other means.

Since the BJ's Defendants have failed to meet their burden in establishing the applicability

of the attorney-client privilege and the work product doctrine to the thirty-two sets of investigation

notes at issue, their Motion for Protective Order must be denied.

As a final note, this Court has serious concerns over the way in which the BJ's Defendants

have conducted discovery.  At the June 9, 2020, status conference, their counsel argued that it was

standard practice for the BJ's Defendants not to produce the investigation notes.  While it is

certainly reasonable and expected that a party would not produce documents over which it is

asserting a privilege, it is unacceptable for a party not to disclose the existence of such documents,

thereby preventing any challenges to the privilege asserted.

A privilege log is designed to prevent this very problem by disclosing that the documents

exist, that a privilege is being asserted over them, and the basis of the privilege so asserted, all

without disclosing the documents themselves.  Here, however, the BJ's Defendants opted not to

produce a privilege log and never intentionally disclosed the existence of the investigation notes.

But for the BJ's Defendants inadvertent disclosure of the investigation notes for the subject

---

[1] The Court notes that the BJ's Defendants did not raise the argument that each of the investigation notes at issue could be protected work product due to the circumstances surrounding each of those incidents.  The BJ's Defendants' argument as to work product was solely premised on the investigation forms being work product because of the nature of those forms.  As such, this Court shall not address, and the BJ's Defendants would not have met their burden regarding, the possibility that discrete investigation forms could have been deemed protected work product.

incident, the other parties would have no knowledge that such documents exist, thereby depriving them of discoverable materials.  This is contrary to the Federal Rules of Civil Procedure and contrary to the spirit of the discovery process.  See e.g. *Polylok, Inc. v. Bear Onsite, LLC*, 2017 WL 1102698, \*6 (W.D. Ky. Mar. 23, 2017) (finding the defendants' refusal to produce a privilege log in those circumstances to be inexcusable); *McCarty v. Covol Fuels No. 2, LLC*, 2011 WL 13380485, \*4 (W.D. Ky. June 6, 2011) ("withholding information and/or materials without providing a privilege log is contrary to the Rule") (citing Fed. R. Civ. P. 26(b)(5), advisory committee's note, 1993 amendments; *Westport Ins. Corp. v. Wilkes & McHugh*, 264 F.R.D. 368, 374 (W.D. Tenn. 2009); *Hasting v. Asset Acceptance, LLC*, 2007 WL 2572229, \*2 (S.D. Ohio 2007); *Bowling v. Scott County, Tenn.*, 2006 WL 2336333, \*3 (E.D. Tenn. 2006); *Carfagno v. Jackson National Life Ins. Co.*, 2001 WL 34059032, \*2 (W.D. Mich. 2001)).

## CONCLUSION

For the foregoing reasons, the BJ's Defendants' Motion for Protective Order, [DN 33], is **DENIED**.  Defendants shall produce the investigative notes within seven days from the entry of this Order.

**IT IS SO ORDERED.**

December 9, 2020

Lanny King, Magistrate Judge
United States District Court

c:      Counsel of Record