UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:19-cv-00661-RGJ-LLK
*Electronically Filed*

SANDRA BOBALIK, et al.                                                              PLAINTIFFS

v.

BJ'S RESTAURANTS, INC., et al.                                                      DEFENDANTS

### DEFENDANT CENTRAL CLEANING, LLC'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN PORTIONS OF THE PROPOSED EXPERT OPINION TESTIMONY OF PLAINTIFF'S EXPERT, DAVID COLLETTE

Defendant, Central Cleaning, LLC ("Central Cleaning"), by and through its undersigned counsel, for its Reply in Support of its *Daubert* Motion to Exclude Certain Portions of the Proposed Expert Opinion Testimony of Plaintiff's Expert, David Collette, states as follows:

### INTRODUCTION

In their Response, Plaintiffs argue that this Court should ignore the rules of evidence and allow the jury to hear speculative and unreliable conclusions from an expert who cannot definitively offer any opinion on the ultimate issue of this case: why did Sandra Bobalik fall on September 4, 2018? In particular, Plaintiffs argue that their causation expert, David Collette, should be permitted to testify that Central Cleaning was a substantial factor in causing Sandra Bobalik's fall despite the fact that his deposition testimony and report are barren of any evidence supporting that conclusion. In support of this argument, Plaintiffs largely ignore Collette's deposition testimony and instead rely on exclusively on his inadmissible, written report (which is hearsay). Plaintiffs also argue that because the "white towel" method has not been ruled inadmissible by the Court,[1] Collette's heavy reliance on such evidence (generated almost fifteen

---

[1] The Court has made no admissibility rulings, but Plaintiffs do not appear to dispute Central Cleaning's argument that otherwise inadmissible evidence cannot be back-doored in through expert testimony.

months after Sandra Bobalik's fall) is appropriate. That argument fails because Plaintiffs have failed to establish that the "white towel" evidence is admissible. Finally, Plaintiffs argue that Collette's report complies with the requirements of Rule 26(a) even though his deposition testimony (at least as to Central Cleaning) is manifestly inconsistent with the bare-bones conclusions set forth in his written report. Collette's deficient report, coupled with his inconsistent deposition testimony, is not a mere harmless error. An expert cannot open one can of worms through his report (by offering unsubstantiated opinions as to causation) and then open another through his testimony (by admitting he cannot offer an opinion as to causation). As such, Rule 37(c)(1) requires the exclusion of Collette's testimony as to Central Cleaning. All of Plaintiffs' arguments for admitting Collette's testimony fail. This Court should grant Central Cleaning's Motion.

**LAW AND ARGUMENT**

**A.     Collette has not shown that Central Cleaning caused Mrs. Bobalik's fall.**

Plaintiffs argue that Collette is not required to identify a single cause of Mrs. Bobalik's fall, but rather must simply identify whether the Defendants were substantial factors in the fall. [DE 95, Page ID # 2991]. Central Cleaning does not disagree with this notion generally, but where Plaintiffs founder is in failing to recognize that Collette's testimony has not identified *how* Central Cleaning was a substantial factor in the incident. Collette simply makes generalized statements about the floor at BJ's, but points to nothing specific on the part of Central Cleaning that would explain why Sandra Bobalik fell on September 4, 2018. For example, Plaintiffs cite Collette's deposition testimony in which he stated that the cause of the fall was "the floor[2] and the system," but does not explain *how* Central Cleaning played a role in this "system" or how the "system"

---

[2]     The uncontroverted testimony in this case reveals that Central Cleaning played no part in the selection of the type of wood flooring at BJ's or in the refinishing/refurbishing of that floor.

caused Sandra Bobalik to fall on the date in question. This is insufficient. A jury can draw its own conclusions from the evidence in the case; it will not be assisted by Collette's empty conclusions regarding Central Cleaning. Simply referencing "the floor and then the system" will not provide the jury with any specialized insight regarding the cause of the fall generally or Central Cleaning's alleged role in particular.

Importantly, the law excludes opinions from causation experts when they fail to offer specific, reliable testimony on causation. In *Simmons v. Novartis Pharms. Corp.*, 483 Fed. App'x. 182 (6th Cir. 2012), for example, the Sixth Circuit addressed this issue. *Simmons* was a product liability action, wherein the plaintiff alleged that her husband was injured after using certain prescription medications manufactured by the defendant. *See id.* Dr. Obeid, plaintiff's medical causation expert, offered vague and empty opinions—much like Collette does in the present case—about the role the defendant's prescription medications had in the development of the decedent's osteomyelitis.[3] The lower court excluded Dr. Obeid's causation opinions on the basis that he "ha[d] no admissible **specific causation** expert testimony to be offered [] because Plaintiff failed to point to any opinion of Dr. Obeid, under oath and to a reasonable degree of medical certainty, as to the cause of Simmons' [condition]." *Id.* at 185 (emphasis added). The Sixth Circuit agreed:

> First, contrary to Plaintiff's assertion, Dr. Obeid never opined that Aredia and Zometa caused Simmons's ONJ. Plaintiff relies on Dr. Obeid's statement that he found a "very close association" between ONJ and bisphosphonates. However, Dr. Obeid also specifically acknowledged that he "didn't establish causation" in evaluating Simmons's ONJ.

*Id.* Here, Collette offers no **specific causation** opinions. His testimony does not point to any specific cause(s) or even how Central Cleaning was a substantial factor in Sandra Bobalik's fall.

---

[3] The testimony in *Simmons* from the doctor included broad and conclusory statements, such as that there is a "very close association" between the decedent's condition and the use of the defendant's medications, and that leaving the decedent on the medication "compounded the issue" and worsened his condition. *See Simmons*, 483 Fed. App'x at 185.

3

Collette's opinions are perilously similar to those of Dr. Obeid in *Simmons*, in that he acknowledges that he cannot establish what actually caused the fall. Collette explicitly testified: "I don't have the data to say – you know, and bluntly was it the night cleaning, was it the spot cleaning, was it the chemicals they had to use, was it the mops, like what the elements are. . . ." [DE 78-3, Page ID # 1494-95]. In other words, Collette speculates as to what *could have* played a role in Bobalik's fall, but admits he does not "have the data" to reach a definitive conclusion on that issue. Collette also calls this case a "puzzle" and testified that this "is why [he has] a hard time saying what caused this because I'm sure you guys like to say or, it was the grease or it was the soap or it was the mop. **I can't tell**." [*Id.*, Page ID # 1495 (emphasis added)]. He later admits again: "I don't know exactly what caused this thing." [Ex. 1, Deposition of David Collette, pp. 62–63].[4] It is abundantly clear from his testimony that Collette simply does not know what caused Mrs. Bobalik's fall and, therefore, cannot legitimately testify that Central Cleaning was a substantial factor in causing the fall. Broad and vague conclusions, without more, run afoul of *Daubert* and Rule 702. If this case is indeed a "puzzle," it is Collette's responsibility as an expert to assist the jury in organizing the pieces. Collette as much as admits he cannot do so here.

Further, Plaintiffs frequently attempt to fall back on various conclusory portions of Collette's expert report [DE 66-1] in an attempt to persuade this Court that his conclusions with respect to Central Cleaning are at least somewhat substantiated. For example, Plaintiffs note that "[t]hroughout the course of his report, Mr. Collette identifies a number of facts and standards that play a role in formulating his opinions." [DE 95, Page ID # 2992]. However, Collette's report is not evidence and any "support" contained therein is not admissible at trial. It is Collette's *testimony* that will be presented to and considered by the jury, not his written report.

---

[4] For the Court's benefit, Central Cleaning attaches the entirety of David Collette's deposition testimony to this reply. The full transcript was inadvertently admitted from Central Cleaning's motion.

Fed. R. Evid. 702 permits the admission of expert opinion testimony, and not opinions in documents prepared outside of court. *See, e.g.*, *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994). Although Rule 703 allows a testifying expert to rely on other materials in forming their opinions, "Rules 702 and 703 do not . . . permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible." *Id.* at 728; *see also Nachtsheim v. Beech Aricraft Corp.*, 847 F.2d 1261, 1270-71 (7th Cir. 1988) (stating that Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relied, to be admitted to explain the basis of the expert's opinion, and that such materials should not admitted if the risk of prejudice substantially outweighs their probative value.).

In *Fairchild Aircraft*, the district court admitted into evidence the defendant's experts' written reports containing opinions and findings regarding an investigation of an aviation accident.[5] *See* 21 F.3d at 727. In moving for a new trial, the plaintiff argued that the district court erred in admitting the reports, since they contained prejudicial hearsay not within any exception. *See id.* at 727. The Sixth Circuit agreed:

> In concluding that the expert reports were properly admitted, the trial court reasoned that the experts could have referred to the exhibits during direct examination and therefore defendant could properly move for their admission at a later time. As discussed above, however, Rules 702 and 703 carve out a narrow exception to the rule against the admission of hearsay. [The experts] were entitled to *testify* as to their opinion, and rely on admissible evidence. **Neither their written opinions nor the materials on which they relied were admissible under Rules 702 and 703**. Thus, the District Court's conclusion that rules 702 and 703 permit the admission of the reports was erroneous.

---

[5] To be sure, the reports from the *Fairchild Aircraft* experts contained findings and opinions that were based upon tests conducted to determine the cause of the accident and evaluations of the circumstances of the accident—all typical information usually contained in an expert's written report. *See* 21 F.3d at 727.

5

*Id.* at 729 (emphasis added). The *Fairchild Aircraft* holding is clear: an expert's statements in a written report are hearsay if offered as substantive evidence. *See id.* at 730. This Court has previously applied this holding to exclude expert reports. *See Momeni-Kuric v. Metro. Prop. & Cas. Ins. Co.*, 3:18-cv-00197-RGJ, 2019 U.S. Dist. LEXIS 125794 at *26 (W.D. Ky. July 29, 2019) (holding that generally, an expert's report is hearsay and therefore inadmissible, and "thus, the expert reports at issue are inadmissible"); *see also Roach v. Hughes*, 4:13-cv-00136-JHM, 2016 U.S. Dist. LEXIS 192835 at *26-27 (W.D. Ky. Mar. 9, 2016) (holding that expert reports prepared in anticipation of trial are generally inadmissible because they are considered hearsay).

Plaintiffs miss the mark in relying upon Collette's written report to prop up his speculative causation opinions. Collette's written report is inadmissible hearsay pursuant to the Federal Rules of Evidence and Sixth Circuit precedent, including prior rulings of this Court. Collette's deposition discusses some specific general criticisms he has of Central Cleaning's performance and procedures, but he openly and repeatedly admits that he cannot determine what caused Mrs. Bobalik's fall. At best, Collette is guessing—but guesswork, even from an expert witness, is not admissible under Rule 702. The fact that Collette offered some conclusory opinions on causation in his written report is irrelevant; his *testimony* is what could be admitted at trial, not his report. If an expert repeatedly testifies under oath that he cannot opine as to causation, the proponent of his testimony cannot point to the unsworn, conclusory statements set forth in his written report as to that issue.

As a last point on this issue, Collette admits that he does not "have the data" to say what caused Sandra Bobalik's fall. But Rule 702 requires an expert's testimony to be "based upon sufficient facts or data." Fed. R. Evid. 702. Collette acknowledges that he has insufficient data to render specific causation opinions. To wit, Collette admits that he lacks precisely what Rule 702

6

requires. Although Plaintiffs point out that preclusion under *Daubert* and Rule 702 is the exception, not the rule, courts do not place a thumb on the scale in favor of admission or exclusion. Either expert testimony meets the requirements for admission or it does not. As the Sixth Circuit Court of Appeals has explained:

> Rule 702, we recognize, does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line. **Yet, so long as there is a line, some forms of testimony may cross it**. . . .

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (emphasis added). The court went on to hold that testimony should be excluded where an opinion

> contains not just one speculation but a string of them: A suggests by analogy the possibility of B, which might also apply to C, which, if we speculate about D, could eventually trigger E, so perhaps that happened here. At some point, the train becomes too long to pull and the couplings too weak to hold the cars together.

*Id.* at 672. Collette's opinions as to causation cross the line and must be excluded.[6]

**B.    Collette's opinions regarding the "white towel" method are unreliable and inadmissible.**

Plaintiffs' next argument fares no better. Although Plaintiffs correctly point out that the Court has made no ruling on the admissibility of the results of the "white towel" method of floor inspection from more than fifteen months after Sandra Bobalik's fall, Collette's reliance on these events—plainly inadmissible under the Rules of Evidence—betrays the unreliability of his opinions overall. Thus, a *Daubert* motion is the correct procedural mechanism for seeking exclusion of Collette's opinions based upon inadmissible and irrelevant evidence. Plaintiffs devote

---

[6]    Plaintiffs point out that Collette is qualified to testify as an expert witness. Central Cleaning generally does not question Collette's qualifications, but his qualifications alone do not give him a free pass to offer empty speculation to the jury. "[N]o matter how good experts' credentials may be, they are not permitted to speculate." *Tamraz*, 620 F.3d at 671 (citations omitted). "[T]he courtroom is not the place for scientific guesswork, even of the inspired sort." *Id.*

7

nearly five pages of their Response to address Collette's opinions on events that occurred nearly fifteen months *after* Mrs. Bobalik fell. Indeed, Plaintiffs point out that this white towel testing process of the floors at BJ's occurred on January 10, 2020, January 11, 2020, March 2, 2020, and March 5, 2020. [*See* DE 95, Page ID # 2994-95]. Nevertheless, Plaintiffs argue that Collette's conclusions, which are heavily based on these facts, are somehow reliable to apprise the jury of the condition of the floor in **September of 2018**, approximately fifteen months earlier. Neither Plaintiffs nor Collette explain how such remote events are relevant or admissible for purposes of establishing the condition of the floor at the time of Mrs. Bobalik's fall. In fact, Plaintiffs own Response cites to testimony that "there's good days and bad days" with respect to the condition of the floor, which directly contradicts their unfounded contention that the floors were slick all of the time.

The Sixth Circuit has held that "[a] party proffering evidence of other incidents bears the burden of showing the other incidents are substantially similar because they occurred 'under similar circumstances or share the same cause.'" *Cincinnati Ins. Co. v. Banks*, 610 Fed. App'x. 453, 461 (6th Cir. 2015) (citing *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989)). "The purpose of the substantial similarity requirement is to insure that the evidence meets the relevancy requirements of Fed. R. Evid. 401 and 403." *Jackson v. E-Z-GO Div, of Textron, Inc.*, 326 F.Supp.3d 375, 390 (6th Cir. 2018). The evidence of the white towel method occurring nearly fifteen months after the incident does not meet the substantial similarity test and is thus inadmissible. It cannot be said that wiping the BJ's floor with a white towel (even if it did show the floor was dirty) more than a year after Bobalik's fall reveals the same cause and similar circumstances at issue. Obviously, it is impossible to tell why the white towel, on any of the aforementioned dates, may have allegedly picked up contaminates. What is more, there exists no

8

evidence that Central Cleaning was the cause of the white towel picking up contaminants from the floor nearly fifteen months after the accident. Further, in January 2020, a different individual was cleaning BJ's Restaurant on behalf of Central Cleaning and, for this reason alone, the events do not share "similar circumstances or share the same cause." Collette's opinions relying on the white towel method employed in January 2020 should be excluded because they are purely speculative, rely upon inadmissible evidence, and will not assist the jury in deciding what caused Sandra Bobalik's fall fifteen months earlier.

Plaintiffs also assert that the white towel testing method "is admissible, in part, because it goes to the core issues in the case." [DE 95, Page ID # 2992]. But evidence is not admissible just because one party believes it goes to the "core issues in the case." The core issue in this case is what caused Sandra Bobalik to fall on September 4, 2018, not what condition the BJ's floors were in as of January 2020. Fed. R. Evid. 404(b) prohibits the use of evidence of any other crime, wrong, or act to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. *See* Fed. R. Evid. 404(b)(1). Plaintiffs correctly point out that there are multiple exceptions to this rule. These exceptions apply to proving notice, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b)(2). The white towel method evidence meets none of those exceptions, and thus any opinion or conclusion of Collette that relies upon this evidence is inadmissible. Plaintiffs erroneously argue that the white towel testing method falls into the "opportunity" exception because "[t]he white towel method was also an opportunity that was readily available to the Defendants to determine the condition of the floor – a tool to assess the cleanliness of the floor." [DE 95, Page ID # 2992-93]. This is not, however, what "opportunity" means under 404(b). Rather, it refers to a defendant's opportunity to commit a crime or act. *See United States v. Jobson*, 102

F.3d 214, 221 (6th Cir. 1996); *United States v. Blakeney*, 942 F.2d 1001, 1018 (6th Cir. 1991). "Opportunity" under 404(b)(2) means an opportunity to commit the act, not an opportunity to cure an alleged bad act after the fact as Plaintiffs suggest.

The jury should not hear Collette's baseless conclusions relying upon evidence from events over a year after the date of the accident. Those opinions and conclusions are not only extremely speculative, but will invade the province of the jury in their determination of whether Central Cleaning had any role in causing Mrs. Bobalik's fall. As such, Collette's testimony should be excluded on this basis.

### C. Collette's conclusions in his report are deficient and inconsistent with his deposition testimony.

Finally, Plaintiffs argue that Collette's expert report (which contains only 6 conclusions out of 24 that are critical of Central Cleaning) is not deficient because Central Cleaning had an opportunity to depose him. [DE 95, Page ID # 2997-98]. This argument is unavailing, as Collette's failure to apprise Central Cleaning of the full bases for his conclusions in his written report is not a harmless error. Rule 26 "mandates that the initial pretrial expert disclosure consist of a written report signed and prepared by the expert" and sets forth specific requirements for the content of the report. *Reynolds v. Freightliner LLC*, No. 05-cv-70-GFVT, 2006 U.S. Dist. LEXIS 97244, at *14 (E.D. Ky. June 21, 2006). As the court explained in *Reynolds*:

> [T]he detailed and comprehensive nature of this Rule was not inadvertent. The report is intended to reflect the testimony that the expert will give at trial. By requiring parties to provide this information early in the pretrial proceedings, parties can effectively prepare for trial while at the same time avoid incurring the expense of costly and uninformed expert depositions.

*Id.* at 14–15. "In addition to establishing specific requirements for the information contained in the expert report, the sanctions for non-compliance are equally precise" and are set forth in Rule 37. *Id.* at *15. "Those courts considering the implication of Rule 37 on the Rule 26 expert requirements

consistently hold that exclusion is an appropriate remedy well within the Court's discretion." *Id.* at *16.

Plaintiffs argue that "[t]here has been no complaint by any party that they were not given ample opportunity to explore his opinions at the deposition" and "Collette did not end the deposition and did not refuse to answer any additional questions." [DE 95, Page ID # 2997]. This, again, misses the mark. Collette's deposition testimony deviated multiple times from the opinions set forth in his written report—particularly with respect to causation. Plaintiffs are correct that Collette's report is unequivocal: the floor was in a dangerous condition because of

> BJ's unreasonable operations and risk management program, Central's inadequate floor maintenance program execution and management, the Bona floor finish applied to the Kahrs wood flooring, and damp mopping being done nightly using a string mop. This dangerous condition is more likely than not the cause of Bobalik's slip and fall.

[DE 66–1, Page ID # 1076]. But Collette took a much different approach in his deposition, refusing to commit to a firm opinion on causation and admitting multiple times that he simply could not determine the specific cause(s) of Sandra Bobalik's fall.[7] Such inconsistent conclusions do not "decrease the need for expert depositions" nor do they help "avoid an ambush at trial." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010). Quite the opposite. Collette's report indicates that he will testify as to causation. His deposition testimony emphatically states that he will not testify as to that issue. Now Plaintiffs once again claim he will. This game of expert witness "peek-a-boo" is contrary to the letter and spirit of the expert disclosure rules.

---

[7] Plaintiffs argue that Central Cleaning did not raise any issue with the sufficiency of Collette's report prior to his deposition. However, it was only during Collette's deposition that it became apparent that the conclusions contained in the report (however limited and baseless) were inconsistent with his deposition testimony.

11

The factors in *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015), weigh in favor of proving that Collette's report is deficient, and such deficiency is not a harmless error nor justified. Those five factors are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure that surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *See id.* at 747-48. Importantly, if a party fails to provide the information with respect to expert witnesses in Rule 26(a)(2)(B), and such failure was not a harmless error or substantially justified, then "the party is not allowed to use **that information or witness** on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1) (emphasis added).

First, as mentioned, there would be potentially extreme surprise to Central Cleaning as to what Collette will testify to with respect to Central Cleaning's role in Sandra Bobalik's fall because his written report and deposition testimony, as well as Plaintiffs' representations now about what he will testify to, vary so widely. Admitting *any* of his testimony at trial against Central Cleaning is asking Central Cleaning to spin a roulette wheel—will Collette testify that Central Cleaning caused the fall or not this time? Secondly, Central Cleaning cannot cure Collette's inconsistent and meandering opinions and should not be forced to try to guess what Collette will decide to testify to at trial. Thirdly, reconciling Collette's conflicting opinions would consume valuable trial time and potentially confuse and mislead the jury. Allowing Collette to speculate mid-testimony, particularly where that speculation could veer off in any direction (as demonstrated by his deposition testimony), would be inappropriate. This is fundamentally contrary to the purpose of Rule 26, as "the report must be sufficiently complete so as to shorten or decrease the need for expert depositions **and thus to conserve resources**." *Olmstead*, 606 F.3d at 271 (emphasis added).

Fourth, Collette's testimony, if admitted, will undoubtedly be important, since it will lend the imprimatur of expert validation of Plaintiffs' speculative and ever-shifting theories as to why Sandra Bobalik fell and who is to blame. Fifth, neither Plaintiffs nor Collette have offered any satisfactory explanation for the deficiencies in the expert disclosure.

Finally, as explained in *Reynolds*, Collette's testimony is precisely the type that should be excluded under Rule 26. In that case, the court excluded an expert because his reports did not meet the specific requirements of Rule 26:

> Of particular concern is the lack of the "required basis and reasons" for the opinions proffered by Chewning as to conclusions unrelated to his expertise in accident reconstruction. . . . Where there is an absence of meaningful analysis or reasoning, expert testimony must be excluded. . . . The Rule 26 report must outline a line of reasoning arising from a logical foundation because [a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.

*Reynolds v. Freightliner LLC*, 2006 U.S. Dist. LEXIS 97244, at *17 (citations and internal quotation marks omitted). Like the expert's report in *Reynolds*, Collette's report lacks the "required basis and reasons" for his series of conclusory statements and is devoid of "meaningful analysis or reasoning." Collette simply "supplies nothing but a bottom line" and, worse still, Collette changed his bottom line during his deposition testimony. "Simply regurgitating, in a conclusory, 'expert' manner, the information contained in witness statements, medical records, or accident report, does not constitute the type of reasoning or basis required by Rule 26. In fact, it is exactly the type of testimony that demonstrates an absence of meaningful analysis or reasoning that should be excluded." *Id.* at *22.

Pursuant to Fed. R. Civ. P. 37(c)(1), Collette's testimony should be excluded from evidence in this trial due to Plaintiffs' failure to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B).

**CONCLUSION**

In light of the foregoing, this Court should exclude the testimony and opinions of David Collette. He has failed to establish through reliable, admissible evidence or methodology that Central Cleaning was a cause or even a substantial factor in Mrs. Bobalik's fall. In fact, he admits that he lacks the data or information required to render an opinion as to the core issue of causation. Although Plaintiffs attempt to salvage Collette's testimony by relying heavily upon the conclusory statements set forth in his written report, the report is hearsay and inadmissible under the Rules of Evidence and, moreover, relies upon inadmissible evidence. Finally, Collette's testimony should be excluded in its entirety as to Central Cleaning because of Plaintiffs' unjustified and unexplained failure to comply with the disclosure requirements of Rule 26.

**DATED: October 15, 2021.**

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

*/s/ Edward M. O'Brien*
Edward M. O'Brien
Andrew Bokeno
100 Mallard Creek Road, Suite 250
Louisville, KY 40207
502.238.8500
502.238.7995 – fax
edward.obrien@wilsonelser.com
aj.bokeno@wilsonelser.com
*Counsel for Defendant, Central Cleaning, LLC*

## **CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing was filed on October 15, 2021, using the Court's electronic filing system, which will send notice of filing to the following counsel of record:

Michael R. Hance
Chandrika Srinivasan
Patrick J. Smith
Nicholas Craddock
Hance & Srinivasan, PLLC
8700 Westport Road, Suite 101
Louisville, KY 40242
*Counsel for Plaintiffs*

Danielle J. Lewis
Sarah E. Noble
Reminger Co., L.P.A.
730 West Main Street, Suite 300
Louisville KY 40202
*Counsel for Defendants BJ's Restaurants, Inc., and*
*BJ's Restaurant Operations Company*

            */s/ Edward M. O'Brien*
            *Counsel for Defendant Central Cleaning, LLC*

15